**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | |
|---|---|
| **JAMES T. BUECHLER,** *individually and on behalf of all others similarly situated,* | * |
| | * |
| **Plaintiff,** | * |
| **v.** | **Case No.: 2:11-cv-00444 MSD-DEM** |
| | * |
| **BURLAGE HOTEL ASSOCIATES, LLC,** *doing business as* **MARJAC SUITES,** *et al.,* | * |
| | * |
| **Defendants.** | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Plaintiff, by his undersigned counsel, submits this memorandum in support of his motion for class certification.

**TABLE OF CONTENTS**

I.  INTRODUCTION ..................................................................................................2

II.  STATEMENT OF FACTS BEYOND DISPUTE .................................................3

III.  REMEDY PROVIDED BY FACTA......................................................................7

IV.  ARGUMENT ......................................................................................................11

    A.  Rule 23(a)(1) – Numerosity ....................................................................13

    B.  Rule 23(a)(2) – Commonality of Issues...................................................14

    C.  Rule 23(a)(3) – Typicality of Claims.......................................................16

    D.  Rule 23(a)(4) – Adequacy of Representation ..........................................17

    E.  The Criteria of Rule 23(b) Are Satisfied..................................................19

        1.  Predominance................................................................................19

        2.  Superiority.....................................................................................20

        3.  Class Notice ..................................................................................25

        4.  Trial Plan......................................................................................25

V.  CONCLUSION...................................................................................................26

## I.  INTRODUCTION

Plaintiff was a guest at The Marjac Suites hotel, located at 2201 Atlantic Avenue in Virginia Beach, Virginia from January 8th to January 9th, 2011. Upon checking out of the hotel, the hotel presented Plaintiff with a printed receipt that included the last four digits and the expiration date of his MasterCard. *See* **Exhibit 1** (copy of the receipt with card number and expiration dates redacted by undersigned counsel).[1] The Marjac Suites hotel is owned and operated by Defendant Burlage Hotel Associates, LLC (hereinafter "Burlage"). *See* **Exhibit 2** (information from Marjac Suites webpage).

By failing to redact the credit card expiration date on the printed receipt it provided to the Plaintiff, Burlage violated of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, as amended by the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681c(g). In this action Plaintiff seeks statutory damages on behalf of himself and the thousands of other consumers placed at risk by Defendant's unlawful practice. As set forth below, the case should be certified as a class action because it easily meets all the requirements of the class certification rule, FED. R. CIV. PROC. 23.

Plaintiff proposes that the Court certify a Class consisting of the following individuals:

> All persons to whom Defendant provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring after June 3, 2008, on which Defendant printed the person's credit card or debit card number expiration date.

Excluded from the Class are those individuals who have suffered actual damages due to identity theft caused by Defendant's FACTA violations. Also excluded from the Class are those individuals who are now or have ever been executives of Defendant.

The named Plaintiff and the putative class members share one principal issue which place

---

[1] The Exhibits referenced in this memorandum are attached to the *Declaration of E. David Hoskins in Support of Plaintiff's Motion for Class Certification* filed contemporaneously herewith.

them in the identical factual and legal posture with respect to Defendant – namely, whether Defendant, in violation of federal law, provided them with electronically printed receipts at the point of sale that disclosed the card expiration date. This case, therefore, is analogous to other cases where the United States District Courts throughout the country have routinely recognized the propriety of class certification in FACTA truncation cases. *See, e.g., Klingensmith v. Max & Erma's Restaurants, Inc.*, 2007 WL 3118505, *2-3 (W.D. Pa. Oct. 23, 2007)(Lenihan, J.); *Cicilline v. Jewel Food Stores, Inc.*, 2008 WL 895682 (N.D. Ill. March 31, 2008)(Dow, J.); *Redmon v. Uncle Julio's of Illinois, Inc.*, 2008 WL 656075 (N.D. Ill. March 7, 2008)(Castillo, J.); *Matthews v. United Retail, Inc.*, 2008 WL 618960 (N.D. Ill. March 5, 2008)(Castillo, J.); *Meehan v. Buffalo Wild Wings, Inc.*, 2008 WL 548767 (N.D. Ill. Feb. 26, 2008)(Lindberg, J.); *Troy v. Red Lantern Inn, Inc.*, 2007 WL 4293014 (N.D. Ill. Dec. 4, 2007)(Aspen, J.); *Halperin v. Interpark, Inc.*, 2007 WL 4219419 (N.D. Ill. Nov. 29, 2007)(Bucklo, J.); *Medrano v. WCG Holdings, Inc.,* 2007 WL 4592113 (C.D. Cal. Oct. 26, 2007)(Selna, J.); *Reynoso v. South County Concepts, Inc.*, 2007 WL 4922524 (C.D. Cal. Oct. 26, 2007)(Selna, J.); *Armes v. Shanta Enterprise, Inc.*, 2009 WL 2020781 (N.D. Ill. Jul. 8, 2009) (Kapala, J.).

## II.  STATEMENT OF FACTS BEYOND DISPUTE

On December 4, 2003, Congress passed FACTA to prevent identity theft (specifically, credit and debit card fraud). One FACTA provision was specifically designed to thwart identity thieves' ability to gain sensitive information regarding a consumer's plastic payment card account number from a receipt which the consumer discarded or lost. Section 1681c(g), (the

"Receipt Provision"), requires the following:

> Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number **_or the expiration date upon_** any receipt provided to the cardholder at the point of the sale or transaction.

(emphasis suppled).

This section applies to any "device that electronically prints receipts" (hereafter "Devices") for point of sale transactions. 15 U.S.C. § 1681c(g)(3). Congress made the determination that exposing anything more than the last five digits of the credit or debit card account number on a printed receipt would result in an increased risk of identity theft.

For example, the Senate Committee on Banking, Housing, and Urban Affairs, expressly stated as much in its report to the Senate entitled "Amending Fair Credit Reporting Act":

> [FACTA] contains numerous measures which protect consumers from identity thieves. The legislation requires the truncation of credit and debit card account numbers on electronically printed receipts to prevent criminals from obtaining easy access to such key information.
>
> *        *        *
>
> The Committee included th[e truncation of credit and debit card account numbers provision] to limit the number of opportunities for identity thieves to "pick off" key card account information.

S. REP. NO. 108-166 at 3 and 13 (Oct. 17, 2003).

FACTA gave companies that had existing Devices in place prior to December 4, 2003, a generous transition period to comply with the Receipt Provision. 15 U.S.C. § 1681c(g)(3).[2]

---

[2] 15 U.S.C. § 1681c(g)(3) became effective:

> (A) 3 years after the date of enactment of this subsection [December 4, 2003], with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is in use before January 1, 2005; and (B) 1 year after the date of enactment of this subsection [December 4, 2003], with respect to

FACTA's phase in periods, three years for existing equipment and one year for new equipment, were "designed to give merchants a reasonable opportunity to come into compliance with [the Receipt Provision]." S. REP. NO. 108-166 at 13 (Oct. 17, 2003).

In anticipation of the statutory compliance deadlines (January 1, 2005, and December 4, 2006), many credit card companies and third-party processors, including but not limited to VISA and MasterCard, advised merchants of the need for compliance with the Receipt Provision. VISA and MasterCard implemented truncation policies well in advance of FACTA's effective date to ensure compliance with the Receipt Provision.

For example, in a press release leading up to the Visa truncation policy, Visa USA CEO Carl Pascaella stated:

> Today I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. The card's expiration date will be eliminated from receipts altogether. This is an added security measure for consumers that doesn't require any action by the cardholder.
>
> *        *        *
>
> Receipt truncation is good news for consumers, and bad news for identity thieves. Identity thieves thrive on discarded receipts and documents containing consumers' information such as payment account numbers[.] Visa's new policy will protect consumers by limiting the information these thieves can access.

**Exhibit 3**, *Press Release, Visa USA, Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft; Visa CEO Announces New Initiative at Press Conference With Sen. Dianne Feinstein*, P.R. NEWSWIRE. (March 6, 2003).

The truncation requirements were also set forth in the 2006 and 2007 editions of the Visa rules, which also included a picture of a properly truncated receipt. **Exhibit 4** at 62; **Exhibit 5** at 17:

---

any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is first put into use on or after January 1, 2005.



The Visa rules made it explicitly clear that "the expiration date should not appear at all."

*Id.*

In May, 2007 the Federal Trade Commission issued a business alert entitled "Slip Showing? Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts." **Exhibit 6**. That alert stated in relevant part:

> According to the federal Fair and Accurate Credit Transaction Act (FACTA), the electronically printed credit and debit card receipts you give your customers must shorten – or truncate – the account information. You may include no more than the last five digits of the card number, and you must delete the card's expiration date.

*Id.*

On June 3, 2008, the Credit and Debit Card Receipt Clarification Act of 2007, 15 U.S.C. 1681n(d), became effective. The Clarification Act shielded from a finding of willful noncompliance with FACTA any business that printed an expiration date on a cardholder receipt between December 4, 2004, and the enactment of the Clarification Act (i.e., June 3, 2008).

The Clarification Act did not eliminate the statutory requirement that card expiration dates not be printed on the cardholder receipts, but instead created a retroactive safe harbor based upon the belief that the original act was confusing as to whether card expiration dates were also required to be redacted. By maintaining the requirement to not print expiration dates, however,

the Clarification Act made clear that liability under FACTA can exist when, as in this case, a

Defendant continued to print expiration dates on cardholder receipts after June 3, 2008.

Berlage continued to print customer receipts showing the expiration dates after the

effective date of the Clarification Act and knew, or should have known, that this conduct

violated FACTA.

## III.  REMEDY PROVIDED BY FACTA

Reflecting the importance of this issue to Congress, a willful violation of FACTA triggers

statutory damages of between $100 and $1,000 per transaction, plus attorneys' fees and costs.

Specifically §1681n(a) provides that,

> Any person who willfully fails to comply with any requirement imposed under
> this subchapter with respect to any consumer is liable to that consumer in the
> amount equal to the sum of . . . any actual damages sustained by the consumer as
> a result of the failure **or** damages of not less than $100 and not more than $1,000.

(emphasis supplied).

The statute also provides for the award of punitive damages "as the court may allow," 15

U.S.C. § 1681n(a)(2). Damages also include "in the case of any successful action to enforce any

liability under this section, the costs of the action together with reasonable attorney's fees as

determined by the court." 15 U.S.C. § 1681n(a)(3).

There is no requirement that a Plaintiff establish actual damages to recover for violations

of FACTA:

> . . . Congress explicitly provided that FCRA plaintiffs may recover statutory
> damages of $100 to $1,000 for willful violations. Courts interpreting the FCRA
> agree with this analysis. *See, e.g., Hernandez v. Chase Bank USA, N.A.*, 429 F.
> Supp. 2d 983, 988-89 (N.D. Ill. 2006) (denying motion to dismiss because the
> complaint stated a FCRA violation despite not alleging actual damages: "The
> decision in *Murray* forecloses any arguments that actual damages need to be
> established for a willful violation of the FCRA") (referencing *Murray v. GMAC
> Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006)). As the Seventh Circuit observed in
> *Murray*, statutes like the FCRA provide for modest damages without proof of

injury because the actual loss suffered by and individual is likely to be small and hard to quantify: "a modest concern about privacy, a slight chance that information would leak out and lead to identity theft." *Murray*, 434 F.3d at 953.

*Pirian v. In-N-Out Burgers*, 2007 WL 1040864 at * 4 (C.D. Cal. 2007). *See also Murray v. Sunrise Chevrolet, Inc.*, 441 F. Supp. 2d 940, 949 (N.D. Ill.) ("In short, the plaintiff class members may still seek so-called statutory damages as an alternative remedy when they cannot prove and do not seek actual damages. The statute simply limits the amount of statutory damages available to a plaintiff if she cannot prove actual injury or harm.").

The Supreme Court addressed the issue of what constitutes a willful violation under §1681n(a) in *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 127 S.Ct. 2001 (2007) and held that a willful violation occurs when a defendant knowingly and intentionally performs an act that violated the statute, either knowing that the action violates the rights of consumers or in reckless disregard of those rights:

> GEICO and Safeco argue that liability under § 1681n(a) for "willfully fail[ing] to comply" with FCRA goes only to acts known to violate the Act, not to reckless disregard of statutory duty, but we think they are wrong. We have said before that "willfully" is a "word of many meanings whose construction is often dependent on the context in which it appears," *Bryan v. United States*, 524 U.S. 184, 191, 118 S.Ct. 1939, 141 L.Ed. 2d 197 (1998) (internal quotation marks omitted); and **where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well**, *see McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132-133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988) ("willful," as used in a limitation provision for actions under the Fair Labor Standards Act, covers claims of reckless violation); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125-126, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) (same, as to a liquidated damages provision of the Age Discrimination in Employment Act of 1967); *cf. United States v. Illinois Central R. Co.*, 303 U.S. 239, 242-243, 58 S.Ct. 533, 82 L.Ed. 773 (1938) ("willfully," as used in a civil penalty provision, includes " 'conduct marked by careless disregard whether or not one has the right so to act' " (quoting *United States v. Murdock*, 290 U.S. 389, 395, 54 S.Ct. 223, 78 L.Ed. 381 (1933))). This construction reflects common law usage, which treated actions in "reckless disregard" of the law as "willful" violations. *See* W. Keeton, D. Dobbs, R. Keeton, & D. Owen, PROSSER AND KEETON ON LAW OF TORTS § 34, p. 212 (5th ed. 1984) (hereinafter PROSSER AND KEETON) ("Although efforts have been made to distinguish" the terms

8

"willful," "wanton," and "reckless," "such distinctions have consistently been ignored, and the three terms have been treated as meaning the same thing, or at least as coming out at the same legal exit"). **The standard civil usage thus counsels reading the phrase "willfully fails to comply" in § 1681n(a) as reaching reckless FCRA violations**, and this is so both on the interpretive assumption that Congress knows how we construe statutes and expects us to run true to form, *see Commissioner v. Keystone Consol. Industries, Inc.*, 508 U.S. 152, 159, 113 S.Ct. 2006, 124 L.Ed.2d 71 (1993), and under the general rule that a common law term in a statute comes with a common law meaning, absent anything pointing another way, *Beck v. Prupis*, 529 U.S. 494, 500-501, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000).

(emphasis supplied).

The Supreme Court expressly rejected the argument that only knowing violations of the statute can be considered willful violations.

When the term "willful" or "willfully" has been used in a criminal statute, we have regularly read the modifier as limiting liability to knowing violations. *See Ratzlaf v. United States*, 510 U.S. 135, 137, 114 S.Ct. 655, 126 L.Ed. 2d 615 (1994); *Bryan v. United States*, 524 U.S. 184, 191-192, 118 S.Ct. 1939, 141 L.Ed. 2d 197 (1998); *Cheek v. United States*, 498 U.S. 192, 200-201, 111 S.Ct. 604, 112 L.Ed. 2d 617 (1991). This reading of the term, however, is tailored to the criminal law, where it is characteristically used to require a criminal intent beyond the purpose otherwise required for guilt, *Ratzlaf, supra,* at 136-137, 114 S.Ct. 655; or an additional " 'bad purpose,' " *Bryan, supra*, at 191, 118 S.Ct. 1939; or specific intent to violate a known legal duty created by highly technical statutes, *Cheek, supra*, at 200-201, 111 S.Ct. 604. Thus we have consistently held that a defendant cannot harbor such criminal intent unless he "acted with knowledge that his conduct was unlawful." *Bryan, supra*, at 193, 118 S.Ct. 1939. **Civil use of the term, however, typically presents neither the textual nor the substantive reasons for pegging the threshold of liability at knowledge of wrongdoing**. *Cf. Farmer v. Brennan*, 511 U.S. 825, 836-837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (contrasting the different uses of the term "recklessness" in civil and criminal contexts).

*Safeco Ins. Co.,* 551 U.S. at 57 n.9 (emphasis supplied). *See also id.* at 59 (explaining that under rules of statutory construction " 'willfully' covers both knowing and reckless disregard of the law.").

The Supreme Court then explained what constitutes recklessness under FACTA:

While "the term recklessness is not self-defining," the common law has generally

9

understood it in the sphere of civil liability as conduct violating an objective standard: action entailing "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Farmer v. Brennan*, 511 U.S. 825, 836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *see* PROSSER AND KEETON § 34, at 213-214. The Restatement, for example, defines reckless disregard of a person's physical safety this way:

> "The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." RESTATEMENT (SECOND) OF TORTS § 500, p. 587 (1963-1964). It is this high risk of harm, objectively assessed, that is the essence of recklessness at common law. *See* PROSSER AND KEETON § 34, at 213 (recklessness requires "a known or obvious risk that was so great as to make it highly probable that harm would follow").

> There being no indication that Congress had something different in mind, we have no reason to deviate from the common law understanding in applying the statute. *See Prupis*, 529 U.S., at 500-501, 120 S.Ct. 1608.

*Safeco Ins. Co.,* 551 U.S. at 68-69.

"Willfulness can be established by evidence that the defendant acted with 'an aura of indifference to plaintiff's rights' -- in other words, that the defendant willfully blinded himself to facts that would put him on notice . . ." *Philip Morris USA Inc. v. Liu*, 489 F. Supp. 2d 1119, 1123 (C. D. Cal. 2007) (granting summary judgment against infringer who willfully blinded himself to facts that would have put him on notice that he was infringing another person's trademarks through use of counterfeit mark).

The evidence outlined above establishes that Burlage willfully violated FACTA from at least June 3, 2008, through at least January 9, 2011, because it intentionally printed customer receipts showing the credit or debit card expiration date despite widespread industry knowledge of the FACTA truncation requirements.

# IV. <u>ARGUMENT</u>

Many courts interpret Rule 23 to favor the maintenance of class actions. *See e.g., In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 427 (S.D. Fla. 1991) ("the interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action"). The reason to favor class certification is that class action lawsuits are essential, and often the only practical way, to enforce consumer protection laws:

> In a large and impersonal society, class actions are often the last barricade of consumer protection . . . . To consumerists, the consumer class action is an inviting procedural device to cope with frauds causing small damages to large groups. The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in gains which are both handsome and tempting. The alternatives to the class action -- private suits or governmental actions – have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are not truly effective. The consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured, and deterrence of the wrongdoer.

*Eshaghi v. Hanley Dawson Cadillac Co.*, 574 N.E. 2d 760, 764, 214 Ill. App. 3d 995 (Ill. 1991).

As explained in *Chisolm v. TranSouth Fin. Corp.*, 194 F.R.D. 538, 545 (E.D. Va. 2000):

> The purpose of Rule 23 is to promote judicial economy by allowing for litigation of common questions of law and fact at one time. *See Califano v. Yamasaki*, 442 U.S. 682, 701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). Rule 23 is to be interpreted liberally, tempered by the realities and peculiarities of each case to come before the Court. *See In re A.H. Robins*, 880 F.2d 709, 739 (4th Cir. 1989); *Black v. Rhone-Poulenc, Inc.*, 173 F.R.D. 156, 161 n. 5 (S.D.W.Va.1996) (noting the "liberal interpretation accorded Rule 23 in this circuit").

In *Mitchell-Tracey v. United General Title Insurance Co., et. al.*, 237 F.R.D. 551, 555 (D. Md. 2006), Judge Andre Davis took this approach in a class action brought against two title insurers:

> Class certification is a useful tool which can economize and focus judicial resources by allowing the court to consolidate similar claims and provide consistent and conclusive final judgments. Class certification also allows claims

that may not otherwise be brought, because bringing individual claims can be cost prohibitive when the remedy is either injunctive relief or small monetary damages.

*See also Arrington v. Colleen, Inc.*, 2001 WL 34117734 * 1 (D. Md. Apr. 2, 2001) (same).

Simple consumer cases such as this one are routinely certified as class actions by courts in Maryland and elsewhere. The United States Supreme Court has noted that cases involving consumer laws are especially appropriate for class action treatment. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997) ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws.").

This Court should find that the evidence against indisputable conduct of Burlage of providing printed credit and debit card receipts to consumers showing card expiration dates raises questions that can and should be resolved, once and for all, in a class action. The legal and factual issues which will control resolution of this case for the named Plaintiff and for all Class members are relatively simple and straightforward. Indeed, this case does not present the complexity of antitrust or other types of cases which are commonly certified as class actions. *See, e.g., In Re A.H. Robins Co., Inc.*, 880 F. 2d 709 (4th Cir.), cert. denied, 493 U.S. 959 (1989) (mass tort); *Phillips Petroleum Company v. Shutts*, 472 U.S. 797 (1985) (securities fraud).

"To qualify for class certification, the moving party must prove it satisfies all of the elements of Rule 23(a) and one of the subsections of Rule 23(b)." *Pitt v. City of Portsmouth, Va.*, 221 F.R.D. 438, 443 (E.D. Va. 2004)

The four requirements of Rule 23(a) are:

(1)     The class is so numerous that joinder of all members is impracticable,

(2)     There are questions of law or fact common to the class,

(3)     The claims or defenses of the representative parties are typical of the claims or

defenses of the class, and,

(4)     The representative parties will fairly and adequately protect the interests of the

class.

FED. R. CIV. P. 23(a).

For the reasons set forth below, the proposed Class meets all of these criteria.

### A.  Rule 23(a)(1) – Numerosity

The numerosity requirement is satisfied when the quantity of putative class members is

too great to practically join each as an individually named plaintiff. *Chisolm v. TranSouth*

*Financial Corp.*, 184 F.R.D. 556, 560-61 (E.D. Va. 1999). The focus of the numerosity

requirement of Rule 23 is judicial economy. The Rule does not set out a precise numerical

standard, but presents an impracticability of joinder requirement, of which class size is an

inherent consideration. 1 H. Newberg and A. Conte, NEWBERG ON CLASS ACTIONS § 3:5 (4th ed.

2003); *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 497 (D. Md. 1998). Thus, class sizes

of 30-40 members usually raise a presumption that the numerosity requirement is satisfied:

> Certainly, when the class is very large – for example, numbering in the hundreds
> – joinder will be impracticable; but in most cases the number that will, in itself,
> satisfy the Rule 23(a)(1) prerequisite should be much lower . . . . In light of
> prevailing precedent, the difficulty inherent in joining as few as 40 class members
> should raise a presumption that joinder is impracticable, and the plaintiff whose
> class is that large or larger should meet the of Rule 23 (a)(1) on that fact alone.

1 H. Newberg and A. Conte, NEWBERG ON CLASS ACTIONS § 3:5 (4th ed. 2003). Plaintiff need

not show the precise number of members in the class, *Evans v. U.S. Pipe & Foundry Co.*, 696

F.2d 925, 930 (11th Cir. 1983); *Folsum v. Blum*, 87 F.R.D. 443, 445 (S.D.N.Y. 1980), because "a

contrary rule would foreclose most class litigation . . . ." 1 H. Newberg and A. Conte, NEWBERG

ON CLASS ACTIONS § 3:5 (4th ed. 2003).

Defendant Burlage operates the The Marjac Suites hotel, which contains fifty-four hotel

suites and is located on the Virginia Beach Oceanfront. **Exhibit 2**. Defendant accepts credit cards for payments and although discovery is necessary to determine the total number of plastic payment card transactions made during the proposed class period, it is likely that these transactions total in the thousands. In this circumstance, the numerosity prong of Rule 23 is undeniably satisfied. *See Chisolm v. TranSouth Fin. Corp.,* 184 F.R.D. 556, 561 (E.D. Va. 1999) (finding numerosity in a class containing at least 2500 putative class members with claims against the defendant because "[t]he group offered as a class is too large for the prospect of the active participation of each member to be practical.")

## B.  Rule 23(a)(2) – Commonality of Issues

As explained in *Pitt v. City of Portsmouth, Va.*, 221 F.R.D. 438, 444 (E.D. Va. 2004):

> Rule 23(a)'s commonality prong requires that there is at least one question of law or fact common to the class. *Jeffreys v. Communications Workers of Am.*, 212 F.R.D. 320, 322 (E.D. Va. 2003). The fact that some factual variances in individual grievances exist will not defeat the commonality requirement. *Id.* Thus, the proper inquiry for determining commonality is "whether the group of ... individuals share questions of law and fact in common such that the class-wide adjudication would be appropriate." *Chisolm* [*v. TranSouth Fin. Corp.*], 184 F.R.D. 556, 567 (E.D. Va. 1999).

Legal and factual questions will be viewed as commonly shared so long as "their resolution does not depend on the facts of any class member's particular claims, but depends rather on the evidence presented taken as a whole." *Chappelle v. E.I. DuPont DeNemours & Co.*, 75 F.R.D. 74, 77 (E.D. Va. 1977). *See also Jeffreys v. Communications Workers of Am.*, 212 F.R.D. 320, 322 (E.D. Va. 2003) (holding that the commonality requirement is satisfied when "all claims are otherwise identical and arise from the same isolated set of facts").

Although Rule 23(a)(2) requires only that there be a single common question of law or fact in order for the court to certify the class action, this case raises numerous questions of both law and fact which are common to the Class, which include the following:

(a)     Whether the Defendant printed card expiration dates on printed plastic payment card transaction receipts;

(b)     Whether the Defendant willfully violated Section 1681c(g) of the FCRA by failing to provide consumers, who used their plastic payment cards in point of sale transactions with Defendant, with electronically printed receipts that complied with the Receipt Provision; and

(c)     The proper measure of statutory damages.

The pertinent factual and legal issues in this case clearly are common to the Class. Here, the central common and unifying question applicable to the named Plaintiff and all class members – whether the Defendant willfully violated Section 1681c(g) of the FCRA by providing consumers using plastic payment cards in point of sale transactions with electronically printed receipts that failed to comply with FACTA's truncation requirements during the applicable time period – is identical in all material respects. The assessment of damages is straightforward and will be identical for each Class member because all that is sought in this case is an award of statutory damages.

Other district courts have held that the same common questions of law and fact described by Plaintiff in this case satisfy the commonality requirement of Rule 23. *See Matthews*, 2008 WL 618960 at *4 ("the common nucleus of operative fact is the defendant's issuance of receipts that display the expiration date or more than five digits of a person's credit card in violation" of FACTA); *Cicilline*, 2008 WL 895682 at *3; *Reynoso*, 2007 WL 4922524 at *2 ("The overriding legal issue is whether [defendant's] non-compliance was willful . . . . Accordingly, there is a common core of salient facts and legal issues.").

In this case, the requirement of commonality is similarly satisfied. *See Chisolm v.*

*TranSouth Fin. Corp.*, 184 F.R.D. 556, 562 (E.D. Va. 1999) (finding commonality because "the legal injury allegedly sustained by the individual consumers flows in each instance from a common nucleus of operative facts; i.e., the identical . . . commercial practices of the defendant.").

## C. Rule 23(a)(3) – Typicality of Claims

"The typicality requirement mandates that Plaintiffs show (1) that their interests are squarely aligned with the interests of the class members and (2) that their claims arise from the same events and are premised on the same legal theories as the claims of the class members." *Jeffreys v. Communications Workers of Am., AFL-CIO*, 212 F.R.D. 320, 322 (E.D. Va. 2003). "'The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class.'" *Chisolm v. TranSouth Fin. Corp.*, 184 F.R.D. 556, 563 (E.D. Va. 1999) (quoting *Broussard v.Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1988). "[T]he named plaintiff must simply 'be part of the class and possess the same interest and suffer the same injury as the class members.'" *Pitt v. City of Portsmouth, Va.*, 221 F.R.D. 438, 445 (E.D. Va. 2004) (quoting *Lienhart v. Dryvit Systems, Inc.*, 255 F.3d 138, 146 (4th Cir. 2001)).

The facts underlying named Plaintiff's transactions are straightforward and typical – he stayed at Defendant's hotel, paid his bill with his MasterCard and received an electronically printed receipt at the point of sale that violated FACTA. It is beyond reasonable dispute that all other members of the Class who paid with a debit or credit card also received a similar printed receipt. Like all Class members, the named Plaintiff was legally entitled to receive a FACTA-compliant receipt that did not expose him to an elevated risk of identity theft; like all Class

members, however, the named Plaintiff received a receipt that violated FACTA's truncation requirement.

Thus, the Plaintiff's claim presents the identical fact pattern (the electronically printed customer receipt showing the expiration date) and legal theory (Defendant willfully violated FACTA's truncation requirement) that each Class member would have to present if he or she filed an individual suit. The claim of every Class member, therefore, is based upon a common pattern of wrongdoing and conduct by Defendant.

The Plaintiff's claim is, therefore, not only typical of the claims of the Class, but is virtually identical to them. *See Redmon*, 2008 WL 656075 at *3 (finding plaintiff's claim typical of those of class members where plaintiff and class members all received receipts from defendant which violated FACTA); *Meehan*, 2008 WL 548767 at *2 (same); *Troy*, 2007 WL 4293014 at *2 (same); *Cicilline*, 2008 WL 895682 at *3 (same); *Reynoso*, 2007 WL 4922524 at *3 (plaintiff's claim is not only typical of, but "substantially identical" to, claims of class members, where he alleged that defendant provided a receipt in willful violation of FACTA); *Medrano*, 2007 WL 4592113 at * 3 (same).

### D.  Rule 23(a)(4) – Adequacy of Representation

The standards of Rule 23(a)(4) are met if it appears that the named Plaintiff's interests are not antagonistic to those of other class members and the Plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation. *See e.g., Bogosian v. Golf Oil Corp.*, 561 F.2d 434, 449 (3d Cir. 1977), cert. denied, 434 U.S. 1086 (1978); *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir.), cert. denied, 421 U.S. 1011 (1975).

As explained in *Jeffreys v. Communications Workers of Am., AFL-CIO*, 212 F.R.D. 320, 323 (E.D. Va. 2003):

under Rule 23(a)(4), the class representatives must adequately represent the interests of the class members, and legal counsel must be competent to litigate for the interests of the class. *See McGlothlin*, 142 F.R.D. at 633; *Brown v. Cameron-Brown Co.*, 92 F.R.D. 32, 40 (E.D. Va. 1981). Because litigation by the class representatives will bind the class members, due process mandates "that named plaintiffs will possess undivided loyalties to absent class members." *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998). Class representatives must also have a general understanding of the facts and claims at issue, as well as illustrate a commitment to the case. *See Brown*, 92 F.R.D. at 41.

The requirement of adequate representation assures that absent class members, who will be bound by the result, are protected by a vigorous and competent prosecution of the case by someone who shares their interests. *See* 1 H. Newberg and A. Conte, NEWBERG ON CLASS ACTIONS § 3:5 (4th ed. 2003). The Court needs to ensure "that the relationship of the representative parties' interests to those of the class are such that there is not likely to be divergence in viewpoint or goals in the conduct of the suit." *Bogosian*, 561 F.2d at 449.

The named Plaintiff in this case has no claim or interest that conflict with those of the Class. He has followed this case diligently.

Likewise, the named Plaintiff and the Class in this case are represented by competent and experienced counsel who have represented numerous classes in actions involving consumer frauds and other legal violations. As set forth in the *Declaration of E. David Hoskins in Support of Class Certification* and the *Declaration of Bizhan Beiramee in Support of Class Certification*, Plaintiff's counsel have participated in numerous class actions and have substantial experience in consumer and commercial litigation.

Therefore Plaintiff's claims satisfy the adequacy requirements of Rule 23(a)(4). *See Chisolm v. TranSouth Fin. Corp.*, 184 F.R.D. 556, 564 (E.D. Va. 1999) (finding adequate representation noting that the uniform conduct by the Defendant created "a factual context where the class claims are so interrelated that the interests of the class members will be fairly and

18

adequately protected by the named representative[ ].").

### E.  The Criteria of Rule 23(b) Are Satisfied

After finding that all four requirements of Rule 23(a) have been met, the Court should

certify the case as a class action if any one of three criteria in part (b) of the Rule is satisfied.

Rule 23(b)(3) provides that a class action is maintainable where:

> The court finds that the questions of law or fact common to class members
> predominate over any questions affecting only individual members, and that a
> class action is superior to other available methods for fairly and efficiently
> adjudicating the controversy.

Class certification of Plaintiff's claim is appropriate under Rule 23(b)(3) because key

factual and legal issues regarding Defendant's liability predominate throughout the Class, and a

class action is the superior method of adjudicating claims such as the present that involve

relatively small monetary damages between $100 and $1,000 per violation.

### 1. Predominance

"The object of the predominance test is to determine whether the class at issue is

cohesive enough to warrant adjudication by representation." *Jeffreys v. Communications

Workers of Am.*, AFL-CIO, 212 F.R.D. 320, 323 (E.D. Va. 2003) (citing *Amchem Prod., Inc., v.

Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed. 2d 689 (1997). In *Amchem,* the Supreme

Court noted that the predominance requirement is easily met in consumer protection cases such

as this one. *See* 521 U.S. 591, 625 (1997).

Here, Plaintiff and the Class allege statutory injury by a common course of conduct.

These allegations of a common course of conduct "provide[] the 'single central issue' required to

ensure predomination of common questions over individual issues. *In re Prudential Insurance

Sales Practices Litigation,* 962 F. Supp. 511-512 n.45 (D. N.J. 1997) (citing cases). The primary

19

issue in the case is whether Defendant's violation of FACTA was "willful," thereby triggering

Plaintiff's entitlement to statutory damages. The issue of "willfulness" is a common issue of law

and fact which predominates over any possible individual issues in this case.

It is black letter law that in determining whether common issues predominate, the Court's

inquiry should be directed primarily toward the issue of liability. *See Bogosian v. Gulf Oil Corp.*,

561 F.2d at 456. In summary, Defendant's liability in this case hinges on its uniform practice of

printing the card expiration date on customer credit card receipts during the proposed class

period.

Once this common question of liability is resolved, all that remains is the mechanical act

of computing the amount of statutory damages (from $100 to $1,000) to be applied to each

transaction in violation of FACTA. *See Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975).

The damage issue also predominates in this action, rendering it similarly well suited for class-

wide resolution because each Class member is entitled to the same amount of statutory damages.

*In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 522 (S.D.N.Y. 1996); *see also,*

*In re Prudential Insur. Co. of America Sales Practices Litig.*, 962 F. Supp. at 450, 516 (D.N.J.

1997).

Therefore, predominance is not credibly in dispute in this case. In fact, as noted above,

the common questions of law and fact are virtually the only issues in this case. *See Chisolm v.*

*TranSouth Fin. Corp.*, 184 F.R.D. 556, 565 (E.D. Va. 1999) (finding predominance because "the

present plaintiffs are not in a situation where the individual stakes are high and the disparities

among class members great.").

## 2. Superiority

In determining whether a class action is the superior method of resolution, the following facts are relevant:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Jeffreys v. Communications Workers of Am.*, AFL-CIO, 212 F.R.D. 320, 323 (E.D. Va. 2003).

Based upon these factors, certification is appropriate. First, it is unlikely that an individual plaintiff would have the resources to pursue a claim – especially since any individual claim is only worth between $100 and $1,000 dollars. As one court has noted:

> This is precisely the kind of case that class actions were designed for, with small or statutory damages brought by impecunious plaintiffs who allege similar mistreatment by a comparatively powerful defendant, one that, if the facts alleged were proved, otherwise might get away with piecemeal highway robbery by committing many small violations that were not worth the time and effort of individual plaintiffs to redress or were beyond their ability or resources to remedy.

*Van Jackson v. Check'N Go of Illinois, Inc.*, 193 F.R.D. 544, 547 (N.D. Ill. 2000); *see also Matthews v. United Retail, Inc.*, 2008 WL 618960 at * 5 (N.D. Ill. March 5, 2008)(Castillo, J.) ("FACTA claims are especially well-suited to resolution in a class action where, as here, 'potential recovery is too slight to support individual suits, but injury is substantial in the aggregate.'") (quoting *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006); 6 H. Newberg and A. Conte, NEWBERG ON CLASS ACTIONS § 3:5 (4th ed. 2003) ("The desirability of providing recourse for the injured consumer who would otherwise be financially incapable of bringing suit and the deterrent value of class litigation clearly render the class action a viable and important mechanism in challenging fraud on the public.").

Courts routinely find class resolution to be "superior" in consumer protection actions, including the FACTA decisions already cited above, and in other cases considering the same statutory damage provision under FCRA. *See, e.g., Perry v. FleetBoston Financial Corp.*, 229 F.R.D. 105, 113 (E.D.Pa. 2005)(FCRA claims); *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) (FCRA claims); *White v. E-Loan,* 2005 WL 1287611, *7 (N.D.Ca. August 18, 2006) (FCRA claims); *Forrest v. C.M.A. Mortgage, Inc.*, 2007 WL 188979, *2-3, (E.D. Wisc. Jan. 19, 2007)(FCRA Claims); *Ashby v. Farmers Insurance Company of Oregon*, 2004 WL 2359968, *7 (D.Or. Oct. 18, 2004)(FCRA claims); *see also, In Re Prudential Insurance Company America Sales Practices Litigation Agent Actions*, 148 F.3d 283 (3d Cir. 1998) (a class action is the superior method – particularly to individual suits –for the fair and efficient adjudication of claims involving a large number of persons injured by violations of consumer protection laws).

Against the above backdrop, class members in this case would have little incentive to pursue separate individual actions, and the class vehicle is thus particularly appropriate to enforce the statutory claims at issue. As explained in *Pruitt v. Allied Chem. Corp.*, 85 F.R.D. 100, 115 (E.D. Va. 1980), "if the Court were to deny class certification, many of the proposed class would more than likely neglect to file individual actions, a result which would obviously conserve judicial resources, but would do little to enhance justice."

Second, Plaintiff is not aware of any other similar non-class litigation commenced by any putative class member against Defendant.

Third, judicial resources are economized and focused by handling this case as a class action. *Mitchell-Tracey*, 237 F.R.D. at 560; *Arrington*, 2001 WL 34117734 at *8. Indeed, unless class members obtain relief through this class action, most will likely obtain no relief at all.

There simply is no other practical means for this class to challenge a practice which stands in clear violation of federal law. "The desirability of providing recourse for the injured consumer who would otherwise be financially incapable of bringing suit and the deterrent value of class litigation clearly render the class action a viable and important mechanism in challenging fraud on the public." 6 H. Newberg and A. Conte, NEWBERG ON CLASS ACTIONS § 21:30 (4th ed. 2003). Alternatively, in the unlikely event that class members become aware of their rights and are able to locate counsel, this would result in a multiplicity of scattered suits resulting in the inefficient administration of litigation.

Finally, there are no manageability issues that would preclude certification, even though the proposed class could include thousands of class members. The issue of "manageability" was discussed in *In Re: Visa Check/Master Money Antitrust Litigation*, 280 F.3d. 124 (2nd Cir. 2001), cert. denied, 122 U.S. 2382 (2002). In that case, the Second Circuit affirmed the certification of a class which consisted of every business in the United States, large and small, which accepted Visa and/or MasterCard credit cards. The class literally consisted of millions of businesses in all of the fifty states ranging in size from Wal-Mart to the local dry cleaner. The defendants' major challenge on appeal was on manageability. The Second Circuit first disposed of defendants' argument that individualized proof of damages should preclude certification, saying that "the fact that there may have to be individual examinations on the issue of damages has never been held, however, a bar to class actions." *Id*. at 139. On the general issue of manageability, the Court stated that "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored, and should be the exception rather than the rule." *Id*. at 140 (citations omitted).

Because discovery will disclose the period over which Defendant provided its consumer

customers with printed receipts that included plastic payment card expiration dates, the Class will be well defined. As a result, delivery of any notice under Rule 23(c)(2) by publication and in-store display will not be unduly difficult; nor are there other manageability issues that will hamper the management of this case as a class action.

Recognizing that consumer class actions are, in general, easy to manage, and understanding that in the absence of a class action, a failure of justice will result, numerous courts have found the class action approach superior in similar cases, and virtually identical cases, involving claims under consumer protection statutes including FCRA and FACTA. *See, e.g., Williams v. LexisNexis Risk Management, Inc.*, 2007 WL 2439463 (E.D. Va. Aug. 23, 2007) (certifying FCRA class action); *Chisolm v. TranSouth Financial Corp.*, 184 F.R.D. 556, 562-63 (E.D. Va. 1999) (certifying consumer class against finance company); *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006) (certifying FCRA class action); *Harris v. Circuit City Stores, Inc.*, 2008 WL 400862 (N.D. Ill. Feb. 7, 2008) (same); *Kesler v. IKEA U.S., Inc.*, 2008 WL 413268 (C.D. Cal. Feb. 4, 2008) (same); *Troy v. Red Lantern Inn, Inc.*, 2007 WL 4293014 (N.D. Ill. Dec. 4, 2007) (same); *Halperin v. Interpark, Inc.*, 2007 WL 4219419 (N.D. Ill. Nov. 29, 2007) (same); *Reynoso v. South County Concepts, Inc.*, 2007 WL 4922524 (C.D. Cal. Oct. 26, 2007) (same); *Medrano v. WCG Holdings, Inc.*, 2007 WL 4592113 (C.D. Cal. Oct. 26, 2007) (same).

In fact, courts have long recognized that "[c]lass action certifications to enforce compliance with consumer protection laws are 'desirable and should be encouraged.'" *Watkins v. Simmons and Clark, Inc.*, 618 F.2d 398, 404 (6th Cir. 1980). Not only does class certification enable class members to share in a financial recovery which they might otherwise never pursue on their own behalf, but it also "provides an opportunity to educate a segment of the public,

those included in the class, of the obligations which creditors owe to them as credit consumers."
*Id*.

Accordingly, this class action is both manageable and far superior to that of individual claims.

### 3. Class Notice

Federal Rule of Civil Procedure 23(c)(2)(B) states, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances. . . ." Rule 23(e)(B) similarly requires, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."

In this case, it appears that direct notice to class members will be possible because the printed receipts include the name and address of the consumer.

### 4. Trial Plan

While a trial plan is not a mandated component of a motion for class certification, Plaintiff proposes the following trial plan to illustrate the manageability and superiority of a class action in this case.

1. The Court will be asked to determine whether the Defendant's standard practice of failing to truncate and/or mask credit card data on the receipts constituted a willful violation of FACTA; the total number of transactions where truncation did not occur; and the appropriate amount of damages between $100 and $1,000 that should be applied per transaction where truncation did not occur.

2. If the Court returns a verdict in favor of the Defendant on liability, the trial will end and judgment will be entered against Plaintiff and the class.

3. If the Court finds for Plaintiff, the Court would then determine the issues of statutory damage amount, punitive damages and attorneys fees.

4. Final judgment will be based upon the jury verdict and the findings of the Court on damages and attorneys fees.

As shown by the above, resolution of this class action will be relatively simple and straightforward. The evidence of Defendant's knowledge and conduct is common to all members of the Class, and may result in summary judgment on the issue of liability being entered in favor of the Class. The Court's review of the evidence will result in an efficient determination whether or not the Defendant violated FACTA and the amount of statutory damages that should be applied to remedy the violation.

## V.  CONCLUSION

This case raises important factual and legal issues for thousands of consumers, issues which are common to all. The Plaintiff is committed to bringing these issues forward to a resolution on behalf of all Class members. The only practical method for adjudicating this case is through class certification. The Court should certify the Classes as proposed.

Dated: August 18, 2011                              Respectfully Submitted,


By:  /s/ Bizhan Beiramee
Bizhan Beiramee, Esq., VSB #50918
BIZHAN BEIRAMEE, ESQ., P.C.
6663 B Old Dominion Drive, Third Floor
McLean, Virginia 22101
*bbeiramee@beiramee.com*
(703) 483-9600 (Tel.)
(703) 483-9599 (Fax)

STATEMENT RE: CERTIFICATE OF SERVICE

A copy of the foregoing shall be served upon the Defendant with the summons and

complaint, at which time appropriate proof of service shall be furnished.

By: _/s/ Bizhan Beiramee_____